Frey and another *v.* Hebenstreit and another.

FREDERICK FREY and another *v.* MAURICIO HEBENSTREIT and another.

Bail not fixed with the debt before the passage of the act of the 28th of March, 1840, 'to abolish imprisonment for debt,' were discharged by that act.

The act of the 28th of March, 1840, having abolished the *capias ad satisfaciendum*, no such writ could be executed, though in the hands of the sheriff at the time of the passage of the act.

A sheriff cannot be made liable for failing to return a *capias ad satisfaciendum*, where the writ was abolished before the return day.

The 19th section of the act of 10th February, 1841, cannot revive the responsibility of bail previously discharged by the act of the 28th of March, 1840.

The execution of an obligation may be suspended, but the obligation itself cannot. Where the obligation has once ceased to exist, it can only be revived in the manner it was created.

The condition of a bail bond, that the defendant shall not depart from the state without the leave of the court, is modified by the provision of art. 230 of the Code of Practice, that 'one who has become surety that another shall not depart from the state, or leave the jurisdiction of the court by which the order of surety was granted, may be discharged from all responsibility by surrendering to the sheriff the person of the debtor.'

Bail will be discharged, where the surrender of the debtor becomes impossible by the act of God, as in case of the death of the debtor; or is rendered vain and useless by the act of the law, as in case of the abolishment of imprisonment for debt.

APPEAL from the Commercial Court of New Orleans, *Watts,* J.

*C. M. Conrad,* for himself, and the other appellant. The bail bond is, *in its terms,* a positive obligation to pay a sum of money, on a certain condition, which condition, it is admitted, has occurred.

But according to the principle laid down in *Jayne et al.* v. *Cox*, 8 Mart. N. S., 168, the surety, even after the occurrence of the condition, may discharge himself by surrendering the debtor. The obligation is, therefore, one with a resolutory condition, Civ. Code, art. 2040 ; or, viewing it in the light most favorable to the surety, is an alternative obligation. Ib., art. 2061. Pothier, Traité des Obl., No. 250. Viewed in either light, if the condition by which the obligation of the surety was to be discharged has not occurred, he remains bound ; or, if prevented from fulfilling one obligation, though without his fault, he still remains bound to fulfil the other. Civ. Code, art. 2066. Pothier, Traité des Obl., 251.

It is contended, that the surety was discharged by the law of 1840, because it put him *in duriori casu*. To this I answer :

1st. That supposing such to be the fact, a law making his condition worse, ought not to be construed to make it better; a law depriving him of *one* out of *two* modes of discharging a debt, ought not to be construed to extinguish the debt altogether.

2d. That the law of 1840 did in no manner interfere with the surety. The writ of *capias ad satisfaciendum* was of no use to him. It could only be issued after *judgment*, and on behalf of the creditor.

Arts. 230, 231, and 233 of the Code of Practice enumerate the only remedies afforded to him, and the abolition of the writ of *capias ad satisfaciendum* does not repeal, nor in any manner affect those articles. As the act of 1840 does not abolish *imprisonment for debt generally*, but only a particular writ, it is by no means clear, that a party surrendered by his bail, under the arts. 230 and 233, would be entitled to a discharge under that law. Some confusion has arisen in regard to this matter, by the application of *common law decisions*, to the cases of sureties on the bonds given by defendants *arrested under the provisions of the Code of Practice of this state*. That there is some analogy between the two remedies, is admitted; but that they are precisely similar, is denied. At common law the defendant may be held to bail *in any case*, without an affidavit that he is *about to leave the kingdom*. 3 Blackstone, 287. Comyn's Dig., *verbo* Bail, 9, 2. The condition of the bond is for the defendant's appearance at the return of the *writ*, not that he shall not leave the *kingdom without leave of the*

*court*; and, as a consequence of this condition, if prevented from fulfilling the principal obligation by uncontrollable events, such as death, &c., the bond is not forfeited. But here the obligation is that he shall *not do a certain act*, which act must, from its nature, be *voluntary*, and can be brought about by no *uncontrollable event.* The right of the debtor to surrender himself, or of his surety to surrender him, in discharge of the bond, is a privilege given to them; it is a mode of discharging their obligation; and if, by any circumstance, they are deprived of the power to do so, it is their own fault, inasmuch as all responsibility might have been avoided had the defendants not chosen to leave *the state without leave of the court.* This court has repeatedly decided that the application of common law terms to writs, or process provided by our statutes, does not necessarily imply that the remedy itself, with all its incidents, was intended to be introduced. 7 Mart., N. S., 16. 8 Ib., 315. But here, the word has not been introduced. The words '*bail*,' or '*bail bond*,' do not occur in our laws, as applicable to civil actions. In regard to criminal matters they are used, and very properly, as the condition of the bond in *criminal cases*, is precisely what it is in all cases at common law, to wit, *for the appearance of the defendant;* and if the defendant do not *appear*, the bond is forfeited, whether he have *left the state* or not.

Whatever may have been the case prior to the law of 1841, there can be no doubt since the passage of that act. Whether this act be viewed as declaratory of the *meaning* of a previous law, or as a *modification* of that law, it is equally binding on this court. In other words it is a *law*, unless it be unconstitutional. In what respect is it unconstitutional? So far from *impairing the obligation of contracts*, it is intended to enforce them; to restore a remedy, which, if taken away at all, had been taken away through inadvertence. Is it unconstitutional, because it is retroactive? I have yet to learn that retroactive laws, which do not *impair the obligation of contracts*, are unconstitutional.

The Supreme Court of the United States has, in several instances, recognized the constitutionality of state laws which have gone much further than to apply remedies to past contracts, and have even declared contracts, that had become null and void, valid and binding. 2 Peters, 401. 9 Ib., 88. 11 Ib., 420. There is

not one argument which goes to show that the law of 1841 is unconstitutional, or that it attacks vested rights, which does not apply with much greater force to the law of 1840.

It has been said, by one of the counsel for the defendant, that the question is, whether a party who has been *discharged* from his contract can be again made responsible by legislation? This is not a proper statement of the question. The parties to the bond have not been *discharged*. The legislature have not said so. It was not in the power of the legislature, to *abrogate or abolish a contract.* All that the law of 1840 did, even according to the interpretation given to it by this court, was to repeal a remedy. If the legislature could abolish a remedy, could it not restore it? Suppose, that instead of abolishing the writ, the legislature had temporarily suspended it, as it has done, in effect, would it be contended, that such a temporary suspension of the remedy, absolutely released the debtor? Suppose, that instead of abolishing a particular writ, the legislature had gone further, and temporarily suspended all judicial proceedings, as was done in 1814, will it be pretended that the effect of such a law would be to discharge debtors, or their sureties. But in point of fact, it cannot be said that, in the present case, there has been even a temporary suspension of the rights of the creditor. While the law of 1840 was in full force, the plaintiff was not in want of the writ of *capias ad satisfaciendum*, and before the proceedings had gone so far as to enable him to resort to that writ, the law of 1841 had been passed; so that, as to him, the law of 1840 was always a dead letter.

The decisions heretofore rendered by this court, are not opposed to these views. The court has never pretended that the *contract* was '*abrogated and abolished.*' It has proceeded on the ground that the surrender was an useless formality; but this may be doubted, for *imprisonment for debt generally*, was not abolished by the law of 1840, but only the writ of *capias ad satisfaciendum*. If the debtor were brought within reach of the process of our courts, or if he had never left it, he might be arrested, and detained in prison for three months. At all events, the surrender is no longer useless since the act of 1841; and, consequently, the decision is inapplicable.

*G. Strawbridge,* and *D. Seghers,* for the bail.

MARTIN, J. Charles M. Conrad, and George Eustis, assignees of the judgment recovered by the plaintiffs in this case, are appellants from the discharge of a rule which they had taken on M. S. Cucullu, bail of Francisco Lojero, one of the defendants, to show cause why judgment should not be rendered against him. Imprisonment for debt having been abolished by the legislature of the state, by the act of the 28th of March, 1840; p. 131, it has been frequently held by this court, that all bail not fixed with the debt at that period, were discharged. In the case of *Cooper* v. *Hodge et al.*, 17 La., 476, we held that the bail was released although a *capias* was in the hands of the sheriff at the time of the passage of the law, upon the return of which *non est inventus*, the creditors sought to make the bail liable on the bond. In *Borgsted & Co.*, v. *Nolan et al.*, Ib., 593, we held that the bail could not be made liable, where no *capias ad satisfaciendum* had been issued before the passage of the law, as none could be issued afterwards ; and as it was only upon the return of such a writ, that proceedings could be had against the bail. In *The Atchafalaya Bank* v. *Hozey*, Ib., 509, we decided that the sheriff could not be made liable for failing to return a *capias ad satisfaciendum*, if the writ was abolished before the return day. The appellants, however, have contended, that they are entitled to relief, under the act of the 10th of February, 1841, sec. 19, which provides, that 'for the purpose of fixing the security on bail bonds, the writ of *capias ad satisfaciendum* shall remain in force.' As the appellee was discharged by the former act, it cannot be seriously asked of us to say that the latter act restores his responsibility. The execution of an obligation may be suspended, but the obligation itself cannot. If it cease to exist, it cannot be revived, except in the manner in which it was created. The judge *a quo* has held, that 'the attempt to cloak the intention to restore the liability of the bail, by giving to the section of the act of 1841 the form of an interpretation, construction, or declaration of the meaning of the law, cannot avail ; it would be a violation of the first principles of justice. The act of 1840 may justly be characterized as a freak of legislation, but as it is within their constitutional power, however contrary it may be to a just spirit of legislation or jurisprudence, it must be submitted to.'

To the correctness of the legal principles asserted by the judge

*a quo,* we give our assent; but we do not concur in the reflection cast upon the legislature, for passing the act abolishing imprisonment for debt, in 1840.

The appellants have, moreover, contended, that they are entitled to judgment on the bond, on an assignment of a breach of one of its conditions, to wit, the debtor's departure from the state without the leave of the court. This is modified by an article of the Code of Practice, which provides, that 'one who has become surety that another shall not depart from the state, or leave the jurisdiction of the court by which the order of surety was granted, may be discharged from all responsibility, by surrendering to the sheriff the person of the debtor.' Art. 230. In the case of *Wakefield* v. *McKinnell,* 9 La., 449, we held that the bail is discharged, when the surrender becomes impossible by the act of God, as by the death of the debtor. We must now hold as a corollary, that he is discharged when the surrender becomes vain and useless by the act of the law, as where, by an act of the legislature, the imprisonment for debt is prohibited. *Lex neminem cogit ad vana seu impossibilia.* In the latter case, the bail is no longer bound to surrender the debtor, because the surrender would be *vain,* as the debtor could not be retained in custody. In the former, we held, that the bail was no longer bound to surrender, because the surrender had become *impossible.*

*Judgment affirmed.*